# State *ex rel.* Attorney General *v.* Sayre, as Judge, etc.

142  641
f142   42
142  626

142  641
144  407

## *Quo Warranto-Proceedings.*

1. *Constitutional Law; act creating fifteenth judicial circuit; local law and unconstitutional.*—The Act of the Legislature, approved October 13, 1903, "to create the fifteenth judicial circuit of the State of Alabama, to be composed of the Counties of Autauga, Chilton, Elmore and Montgomery," is a local law within the meaning of section 110 of the Constitution of 1901; and notice of an intention to apply for the passage of this law not having been given as provided by section 106 of the Constitution, such law is void and unconstitutional.

This was a proceeding in the nature of *quo warranto,* and was commenced by an original petition filed in the Supreme Court. The petition was in words and figures as follows:

41c

"To the Honorable Supreme Court of Alabama: Massey Wilson, Attorney General of Alabama, who, for and in the name of said State, in this behalf prosecutes in his own proper person, comes into the said Supreme Court at Montgomery, on the 30th day of November, 1904, and for the said State, gives the Court to understand and be informed, as follows, to-wit:

(1.) "That the Legislature of Alabama, at the last session thereof, attempted to enact a statute entitled, 'An act to create the fifteenth judicial circuit of the State of Alabama, to be composed of the counties of Autauga, Chilton, Elmore and Montgomery; to confer equity jurisdiction on said Court in the Counties of Autauga, Chilton and Elmore, and to provide for the appointment of a judge and solicitor of said circuit.' (General Acts, 1903, p. 488) ; that a bill to that end was introduced into the Senate, and after having passed through all of the parliamentary stages, was duly passed by the Senate as required by the Constitution, and was transmitted to the House of Representatives, and after having passed through all of the parliamentary stages required by the Constitution, was duly passed by the House of Representatives, and was signed in the mode required by the Constitution by the presiding officers of the two Houses, and was approved by the Governor in the manner, and within the time, required by the Constitution; but relator avers that said bill was a local bill, or bill the object of which was to enact a local law, within the meaning of section 110 of the Constitution, and that said bill is, for that reason, unconstitutional and void, and that said bill never became a law.

(2.) "That at the general election held in this State on, to-wit: the eighth day of November, 1904, said T. Scott Sayre was voted for and declared elected to the office of Judge of the Fifteenth Judicial Circuit of Alabama; that he has attempted to qualify as such Judge by taking the oath prescribed for a Judge of the Circuit Court in this State, and that the Governor has issued to him a commission as such Judge; that there is no such office as Judge of the Fifteenth Judicial Circuit of Alabama; that there is no valid statute of this State creating such an office; that said void and unconstitutional

Act attempted to create such a circuit composed of the Counties of Autauga, Chilton, Elmore and Montgomery, and to provide a judge therefor; that said T. Scott Sayre has exercised, and still continues to exercise, the liberties and privileges, and to perform the duties, pertaining to the office of the Judge of the Circuit Court in the Counties of Chilton, Elmore and Autauga, and is unlawfully holding and exercising the duties of said office in said counties; and that no other Circuit Judge is exercising any of the powers, or performing any of the duties, of said office in said counties.

"Wherefore, said Attorney General, in the name of and on behalf of the State of Alabama, prays that process may issue requiring the said defendant, T. Scott Sayre, to answer and show by what authority he claims to exercise and enjoy the powers, liberties and duties of the office aforesaid in the Counties of Elmore, Chilton and Autauga; and that upon the hearing, a judgment be rendered excluding him from the said office, and that all further proper relief be granted."

The answer of the defendant was in words and figures as follows:

"Now comes T. Scott Sayre, the defendant in the above proceeding, and for answer to the information therein filed against him, says:

(1.) "He admits the due passage of the Act of the Legislature referred to in paragraph one of the information, and that the same was duly approved by the Governor in acordance with law.

(2.) "Respondent admits that at the general election held in this State on the eighth day of November, 1904, he was voted for for Judge of the Fifteenth Judicial Circuit, having received all the votes cast in the counties of Montgomery, Autauga, Elmore and Chilton for said office, and that he has been duly declared by the proper authority to have been elected to said office. Respondent further admits that he has qualified as such Judge by taking the oath of office, and that the Governor of Alabama has duly issued to respondent a commission to hold said office and discharge the duties thereof.

(3.) "Respondent admits that he has exercised and is now exercising the liberties and privileges, and has

performed and is now performing the duties pertaining to the office of Judge of the Circuit Court in and for the Counties of Autauga, Chilton and Elmore.

(4.) "Respondent admits that no notice of the intention to introduce the bill which was enacted as the Act referred to in paragraph one of the information was given by publication.

(5.) "Respondent denies that the Act of the Legislature referred to in paragraph one of the information filed in this cause is a local law.

(6.) "Respondent denies that the Act referred to in paragraph one of the information, under which Act this respondent is now exercising the functions of a Circuit Judge, is invalid. He further denies that he is unlawfully holding and exercising the duties of such office."

MASSEY WILSON, Attorney-General for the State. The law is local, within the meaning of the constitutional definition of a local law. It applies to certain political subdivisions of the State less than the whole, to-wit: to the Counties of Autauga, Chilton, Elmore and Montgomery. Being so limited in its application, it is within the very terms of the definition of a local law found in the Constitution.

This provision of the Constitution evidently has reference to the territorial application of statutes, and not to their subject matter. Any statute which is expressly limited in its territorial application to less than the whole State, is necessarily local. Such a statute may be public, but it is none the less local. The definition in the Constitution of general, local, and special or private laws, bears such a close resemblance to some of the expressions of the Court, in the opinion in *Holt v. Mayor,* 111 Ala. 369, as to force the conclusion that the Convention had that decision in mind, and meant to adopt it, when formulating the definition referred to.

Tested by the principle quoted, the act under consideration is a public local law. It certainly does not operate alike on the people all over the State as it operates

[State *ex rel.* Attorney General v. Sayre, as Judge, etc.]

in Autauga, Chilton, Elmore and Montgomery Counties, and is, therefore, local; it does not operate alike on all within those counties, and is, therefore, public.

The distinction drawn in *Holt v. Mayor, supra,* between public laws on the one hand, and general and local laws on the other, has also been made in many other jurisdictions.—26 Am. & Eng. Ency. of Law, 2 Ed., p. 532; *State v. Chambers,* 93 N. C. 600; *Kernigan v. Force,* 68 N. Y. 381.

This Court has correctly decided that a law is local, within the meaning of the Constitution, if it applies to less than the whole State, although its purpose may be to establish a Court which may have an indirect bearing upon the whole State.—*Wallace v. Jefferson County,* 37 South 321.

T. SCOTT SAYRE, *contra.*

HARALSON, J.—The purpose of the proceeding is to test the constitutionality of the Act of the Legislature, "To create the Fifteenth Judicial Circuit of the State of Alabama, to be composed of the counties of Autauga, Chilton, Elmore and Montgomery," etc.—Acts 1903, p. 488.

Section 106 of the Constitution provides, that "No special, private or local law shall be passed on any subject not enumerated in Section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the State, in the county or counties where the matter or thing to be affected may be situated,"—for a time and in a manner specified.

No notice of an intention to apply for the passage of this law was ever published. If the law is local, it is void for want of such notice, unless it is excepted from the provisions of said section by some other provision of the Constitution.

Section 110 of the Constitution defines a general, local and special law thus; "A general law within the meaning of this article is a law which applies to the whole State; (in which section 106 is included) a local law is

a law which applies to any political subdivision or subdivisions of the State less than the whole; a special or private law within the meaning of this article is one which applies to an individual, association or corporation."

The term "general law," and "special and local law," were used in the Constitution of 1875, § § 23, 24, 25, 50, and this court had occasion before this present Constitution was adopted to define the meaning of a general law.

The term in the two Constitutions is identical in meaning. The court said, "In specifying the limitations upon the powers of the legislative department, (Art. IV. § § 23, 24, 25 and 50,) the Constitution uses the term 'general laws.' A proper construction of these constitutional provisions would exclude the definition of a 'public statute' as distinguished from a general statute, that is a statute operating upon the public within the limits of a locality, less than the whole State. The terms, 'general law' and 'public law' are frequently used synonymously, but they are not the equivalent of each other. Every general law is necessarily a public law, but every public law, as defined, is not a general law. A 'general law', as used in our constitution, is a law which operates throughout the State, alike upon all the people or all of a class. * * * * * Any law affecting the public within the limits of the county, or community, would be a public law, though not a general law within the meaning of our constitution. The effect of a statute, more than its wording or praseology, must determine its character as a public, general, special or local statute."—*Holt v. Mayor and Aldermen of Birmingham,* 111 Ala. 372-3.

It has been said "The term 'local' as applied to statutes is of modern origin, and is used to designate an act which operates only within a single city, county or other particular division or place, and not throughout the entire legislative jurisdiction. In this sense, the term 'local' is the antithesis of 'general'."—26 Am. & Eng. Ency. Law, (2nd ed.) 532; *State v. Chambers,* 93 N. C. 600; *Kerrigan v. Force,* 68 N. Y. 381.

In a recent decision, after much deliberation, we held, that a law is local, within the meaning of the Constitution, if it applies to less than the whole state, although its purpose may be to establish a court which may have indirect bearing upon the whole state.—*Wallace v. Jefferson county,* 37 Sou. 321. This is eminently true of the city courts established in different counties of this state, constituting as they do, important agencies in the administration of justice in the state, applicable to all the people in the state, who come within their jurisdiction, and yet, no one can be heard to say, that the several acts by which they were created, were general or other than local laws.

The framers of the present Constitution, had much to do with local laws, and specified 31 instances in which the Legislature should not pass a special, private or local law.—§ 104. It became important, therefore, as was supposed, to define a general, local, special or private law, and they did it in section 110, having in mind, it may be presumed, the definition of such laws, as given by adjudications, especially by our own court. It appears to be beyond question, as has been suggested, that when the Constitution defines a general law to be one that applies, to the whole state, and that a local law is one which applies to any particular subdivision or subdivisions of the state less than the whole, it has reference to statutes in their territorial application, and not in their subject-matter. If the framers had designed to make this so plain that it could not be disputed, it is difficult to see how they could have devised language more apposite for the purpose, than the very language they employed. No obscurity or ambiguity has been or can be suggested in the language of this provision. Such being the case, there is no room for construction. Possible or probable meanings, the courts are not at liberty to search for. All arguments drawn from inconvenience to the public, or from a supposed lack of wisdom or even foolishness, on the part of the framers of the Constitution in the framing of such a provision, are at once silenced. "We can only know what they intended, from what they have said. It is theirs to command, ours to obey. When their language is plain, no

discretion is left to us. We have no right to stray into the mazes of conjecture, or to search for imaginary purposes."—*Lehman v. Robinson,* 59 Ala. 241; *State v. Mc-Graw,* 118 Ala. 166; 6 Am. & Eng. Ency. Law, (2nd ed.) 921.

The fact that circuit courts are of constitutional creation, and that the law in question did not create the court, in the 15th circuit, since the court already existed in the several counties, without the aid of the statute, seems to be without force on the question at issue. The statute did not attempt to create the court. The contention is, not that the court, as a circuit court, did not exist, but in the effort to take the court of these counties out of circuits to which they properly belonged under the general law, and constitute them into a new and additional circuit, was an act of local legislation not forbidden, if done according to the provisions of the Constitution, to make local legislation valid. It is a mistake to argue, that new circuits may not be created by local legislation if done under and not offensive to the notice provision. If the statute is a local one, as we hold it is, the whole of the defendant's difficulty grows out of the fact, that the required notice of an intention to apply for the passage of the law was not given, and not from the fact that such legislation may not be had when the requirements of the Constitution therefor, are complied with. According to reason and authority, we conclude that the statute was a local one.

Not much remains to be said, as to the want of notice of an intention to apply for the passage of the law. The terms of the Constitution above quoted are plain and mandatory, *that no local law shall be passed on any subject unless the prescribed notice is given.* / It is argued, that the legislature is commanded by the Constitution to divide the state into convenient circuits, and that this necessarily means the exercise of legislative discretion in the premises, and that when a duty is laid upon the legislature to enact legislation of a particular character, the notice provision is not applicable. But this is not a sound construction of the notice provision. It is too broad. It is the duty of the state by general law to divide the state into convenient and proper circuits and

to adopt local legislation, even, to that end, when all the conditions for the adoption of such measures are complied with, and it seems proper that it should be done. Discretion may exist when duty is imposed, however, when the manner of its exercise is not forbidden and the duty is not prescribed in mandatory terms. While it was the duty of the Legislature to pass the law in question, if it appeared to be the wise thing to do, yet it could never have been its duty to adopt the measure without a compliance with the notice provision. The argument on this point seems to proceed on the line, that is was the imperative duty of the state to adopt the measure, and it was not limited by the notice provision. But no such duty as that is required, and the argument breaks down at this point. The Legislature might well have refused to enact the measure, on the supposed idea that it was better for the counties composing the new circuit, to have their courts held under the old and general law, dividing the state into convenient circuits. The fact that the state could not be required to give the notice, is of no importance. If the state could not pass the law without the notice, then it would have to be given by some one before the state could properly act, and the apprehension need never be indulged that those concerned for such legislation will not give the necessary notice. If it be said, as it has been, that great evils may overtake the state, if notice be required in a case of this kind, the reply is, it might not be difficult to show that greater ones may arise, if it is not required.

Decisions of other courts have been brought forward, tending to sustain the contentions of the defendant. Whether the constitutional and statutory provisions of those states bearing on the question, are the same as ours, we need not stop to consider. It is sufficient to say of our Constitution, that its terms are so plain and mandatory, we feel closed by its provisions, and can discover no escape from holding the law to be unconstitutional. A proper judgment of ouster of defendant from office he claims to hold, will be entered.

Ouster awarded.

McCLELLAN, C. J., SIMPSON and ANDERSON, J.J., concurring.

TYSON, DOWDELL and DENSON, J.J., dissenting.